Coaster Amusement Company, a Corporation, v. Commissioner.
Coaster Amusement Co. v. Commissioner
Docket No. 109621.
United States Tax Court
1943 Tax Ct. Memo LEXIS 206; 2 T.C.M. (CCH) 438; T.C.M. (RIA) 43333; July 8, 1943
*206 Francis M. Holt. Esq., for the petitioner. F. L. Van Haaften, Esq., for the respondent. DISNEY
Memorandum Opinion DISNEY, Judge: This case involves income and excess profits tax liability for the calendar year 1940. The Commissioner determined a deficiency in income tax of $364.97 and in excess profits tax in the amount of $293.10. The question involved is whether the petitioner received certain income in the year 1940 as contended by it, or in 1941 as contended by the respondent. [The Facts] The facts involved may be briefly stated: The petitioner is a corporation with its principal place of business at Jacksonville Beach, Florida. The return for the taxable year was filed with the collector for the Jacksonville district of Florida. In 1935 the petitioner purchased from W. H. Adams a roller coaster and at the same time leased from him the land upon which the roller coaster stood at a rental of $300 per month. Later in 1935 the petitioner acquired a fishing pier. In 1936 the petitioner executed to W. H. Adams a chattel mortgage in the amount of $4,000, covering the roller coaster and fishing pier. In 1938 the lease was extended for five years at a rental of $300 per month. *207 On December 15, 1938, one Flo Smith (later Kale) recovered a judgment against the petitioner in the Circuit Court of Duval County, Florida in the sum of $5,000 and costs. In February 1939 W. H. Adams instituted a foreclosure action against the petitioner to foreclose the $4,000 mortgage. Flo Smith (later Kale) was made a defendant. The petition recited, inter alia, that in case the suit should be pending when the operation of the roller coaster should begin in the summer of 1939, the plaintiff would ask leave to amend and make application for the appointment of a receiver. On July 3, 1940, the court, upon the application of Flo Smith (later Kale), and reciting that the plaintiff had also applied for a receiver, appointed a receiver to take charge of the roller coaster and the fishing pier, to operate the same, collect the fees and charges made for the use thereof, and to pay therefrom such sums as the court might authorize and to hold the balance subject to the order of the court. The petitioner owned other property in addition to that over which the receiver was appointed. After the appointment of a receiver, W. H. Adams made application to the court for an order directing *208 the receiver to pay the rent due under the lease. The application was denied. No rent was paid by the receiver or by the petitioner to W. H. Adams during 1940. The petitioner had, prior to the institution of the receivership, always paid the rent upon the lease to the extent of available funds. The petitioner filed a corporation income tax return for the period from January 1, 1940, to the time of the appointment of a receiver on July 3, 1940. For that period gross receipts were $2,258.06 with cost of operations $1,802.36, leaving total income of $455.70. Deduction of $977.54 reduced net income to a loss of $521.84. Thereafter the receiver made application for permission to file an income tax return. The commissioner appointed to investigate the question reported that the receiver was not required to file a return and the court so held. Thereafter the petition filed a corporation income tax return showing the income of the corporation for the entire year, including the income received by the receiver. Gross receipts for the entire year were $6,805.56, with cost of operations $4,186.15, leaving total income of $2,619.41. A claim of deduction of $3,000 for the rent incurred, though *209 not paid, reduced the net income to a net loss of $380.59. On November 13, 1941, the foreclosure suit was dismissed on the application of W. H. Adams, and the receivership was terminated. W. H. Adams received from the receiver the total of $11,744.80, out of which, under the order of the court, he paid the judgment in favor of Flo Smith (later Kale) in the amount of $5,180 together with $1,326.36 expenses. The balance of $5,238.47 was retained by W. H. Adams for application upon rent due from the petitioner. The only books kept by the petitioner consisted of receipts of income and disbursements for labor. In determining the deficiency the Commissioner included in petitioner's income the income from operations deducted by the receiver, upon a cash receipts and disbursements basis. [Opinion] Upon brief both parties argue that the receiver was not appointed for all of the petitioner's property and therefore that the receiver had no duty of filing an income tax return, under the rule laid down in . They differ, however, as to when the petitioner should report the income, the petitioner contending *210 that it should so report in 1941 when the income which the receiver had collected in 1940 was actually received; whereas the respondent's view is that the petitioner through the receiver as its agent received the income in 1940 and should be taxed thereon in that year. The petitioner urges that if taxed upon the income in 1940, it should under the rule requiring clear reflection of income be allowed a deduction for rent due for the year in the amount of $3,600, though in fact it was not paid until 1941. This deduction the respondent denied in the determination of the deficiency and still denies. The petitioner cites , without discussion. We presume that it is the petitioner's view, under that case, that income received by the receiver should not be taxed to the real owner thereof until received by it, and that therefore in this case, because of the litigation over the property, the petitioner, not having received until 1941 the funds which the receiver collected in 1940, should not be taxed thereon until 1941. In this application of the case, we think the petitioner is in error. There is a sharp distinction *211 between the situation here and that construed in In that case there was a contest over the ownership and title to the property producing the income and therefore as to the ownership of income; and the Court, pointing out the fact that the company there might never receive the income and that it was uncertain as to who would be entitled to the profits, held that the company therein involved was not taxable in 1916 on account of income which it had not yet received and which it might never receive (which was in fact received in 1917). Here no one questioned the petitioner's ownership of the property, nor its ownership of the profits therefrom. Each creditor claimed, not in opposition to the title of the petitioner and its ownership of the profits as in the North American Oil Consolidated case, but through such ownership, each seeking to subject the property and income to payment of the debt to him. A judgment creditor, of course, must perforce recognize the title of his debtor to the property upon which he seeks to levy; and a mortgage creditor is not owner of the mortgaged property, or the profits *212 therefrom, until after judgment and sale under judicial process. Thus there was here merely an impounding of such profits because of the claims of a mortgage creditor and a judgment creditor, each of whom claimed priority of payment, in order that it might be available for payment of the creditors at the end of the litigation. We do not believe, therefore, that the conclusion in this case can logically be put upon the authority of the North American Oil Consolidated case. It does not follow, however, that the petition is necessarily taxable upon the income received by the receiver in 1940. Such a result requires a holding that the petitioner, which was upon the cash basis of accounting, had constructive receipt of income which actually never came to its hands, but remained throughout the year in those of the receiver. A clear case of income not reduced to possession thus appears. Upon the subject of such income, Regulations 103, section 19.42-2, says: Income not reduced to possession. - Income which is credited to the account of or set apart for a taxpayer and which may be drawn upon by him at any time is subject to tax for the year during which so credited or set apart, *213 although not then actually reduced to possession. To constitute receipt in such a case the income must be credited or set apart to the taxpayer without any substantial limitation or restriction as to the time or manner of payment or condition upon which payment is to be made, and must be made available to him so that it may be drawn at any time, and its receipt brought within his own control and disposition. * * * It is obvious, without more, that the text of the above regulation fully covers the present situation, for the income in the hands of the receiver was not in any ordinary sense credited to the petitioner or set apart to it without substantial limitation or restriction as to the time or manner of payment. Even if we should consider that there was a credit to the petitioner because of the fact that the money was being impounded for application upon its debts, nevertheless we see that there was substantial limitation or restriction as to the time or manner of payment, and further that the receiver's collections were not made available to the petitioner, and that such funds could not be drawn at any time by the petitioner, or brought within its control and disposition. On the *214 contrary, the record shows that effort was made in vain to get the court to order or to permit the receiver to apply the receivership funds towards payment of the petitioner's obligation for rent. The generally accepted concepts of constructive receipt, which are embodied in the regulation above, in our opinion, forbid a holding that the petitioner had constructive receipt of the income received by the receiver in 1940. The respondent relies, however, upon , in which the Board held that a receiver, over a part only of the petitioner's assets, was exempt from filing an income tax return, under section 225(a) of the Revenue Act of 1926, and that the petitioner was therefore properly charged with the income collected by the receiver. Here, however, we do not have the same situation or question, for we have no question as to whether the receiver or the petitioner was taxable with the income, for the parties both argue that this is not a case where the receiver should file an income tax return, both contending that such was not his duty, since he was not in charge of all of the corporate property. Our question is merely whether *215 the petitioner should report in 1940 or in 1941. Moreover, although the Circuit Court upon appeal of the Hart case reversed the Board, the reversal was based upon the fact that the court found in the facts there involved a situation covered by that portion of section 219 of the Revenue Act of 1926 providing for report by fiduciary where income is accumulated in trust for unascertained persons or persons with contingent interests. The facts were that in addition to the ordinary income received by the receiver, the losing party in the lower court placed in the hands of the receiver, by specific agreement between the parties, certain Liberty bonds, in order to appeal without making a supersedeas bond. It was agreed between the parties, the receiver and other creditors interested, that the receiver should receive and segregate the Liberty bonds, keeping the income therefrom separate from other property, and that upon final determination of the litigation, the bonds should be returned to the owner, if the decree of the lower court was reversed, but, if it was affirmed, they should be held subject to the further order of the court. In holding that the receiver should have filed an *216 income tax return, the court particularly points out that he was acting in a dual and fiduciary capacity, and that the income was "accumulated for the benefit of * * * an unascertained person," and should have been reported by the receiver under section 219(a). Thus we see that in that case ordinary receivership income, which we have herein involved, did not enter into the question presented, and that the case was reversed and the receiver held to report because of the fiduciary capacity created by agreement, which nowhere appears in the instant case. Here, with the parties both contending that the receiver had no duty of filing a return and no fiduciary situation on the part of the receiver being presented, we consider that the Hart case proffers no help. Although the respondent argues, in effect, that to permit a company, a portion of the property of which is under receivership, to report the income therefrom only at the end of the receivership would be to distort income, and further contends that in such case the receiver is, in effect, an agent of the owner, we think the argument insufficient to overcome the well settled concepts of constructive income, as indicated in the *217 regulation. It has been unsparingly said that the principles of constructive income are to be sparingly applied. Whether herein the corporate income was being accumulated for any unascertained person, and therefore to be reported by the receiver, within the reasoning of the Circuit Court in the Hart case, is a question not in anywise presented, and considering the state of the record herein, is not decided. The respondent suggests that , holds that except where receivers are in charge of the entire property or business of a corporation, the corporations must themselves report the income. That case does approve Treasury regulations requiring reports by the corporations, except when receivers are in charge of the entire property of the business; but the case does not decide questions of constructive receipt, nor hold that a corporation wholly unable to obtain any of the income from particular property in the hands of a receiver, must, nevertheless, report such income for taxation prior to the time of actual receipt. We think that under the facts here before us the petitioner may not be held to have *218 constructively received that portion of its income collected by the receiver, until it actually received, or received credit for, such income. We therefore hold that such income was not properly included in the petitioner's income for the year 1940. Decision will be entered for the petitioner.